Kenneth W. FLEMING, Appellant– Defendant Below,

v.

INTERNATIONAL PIZZA SUPPLY CORP., et al., Appellee– Plaintiff Below.

No. 49A02–9310–CV–554.

Court of Appeals of Indiana, Third District.

Sept. 20, 1994.

David E. Wright, David R. Day, Ronald G. Sentman, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, for appellant.

Alan S. Brown, Robert W. Wright, Locke Reynolds Boyd & Weisell, Indianapolis, for appellee.

STATON, Judge.

Kenneth W. Fleming ("Fleming") appeals the trial court's interlocutory order granting partial summary judgment in favor of Peter Jensen ("Jensen"), Harry Kim, International Pizza Supply Corp. and International Pizza Supply Company, Inc. Fleming presents two issues for our review, which we consolidate into one and restate as follows: whether Fleming's actions for breach of fiduciary

duty and fraud are barred by Indiana Code 23–1–44–8.

We reverse and remand.

In October 1988, Fleming and Jensen formed a corporation called International Pizza Supply Corporation ("International Corp."). International Corp. issued 100 shares: Jensen owned seventy-five shares and Fleming owned twenty-five. Fleming was elected president and treasurer of International Corp., and served as its chief operating officer.

In May 1989, Jensen, Fleming and International Corp. entered a buy-sell agreement which provided a minimum price for Fleming's twenty-five shares of $150,000. An amendment to the buy-sell agreement increased the minimum price of Fleming's shares to $300,000.

In December 1990, Jensen entered an agreement with Harry Kim ("Kim") to sell the assets of International Corp. to a new company, International Pizza Supply Company, Inc. ("IPS Co."),[1] which would be owned by Jensen and Kim. Fleming was not aware of Jensen and Kim's negotiations or subsequent agreement until December 27, 1990, when Jensen offered to buy Fleming's twenty-five shares in International Corp. for $30,000. Fleming refused Jensen's offer.

On February 8, 1991, Jensen and his wife conducted a meeting of the directors of International Corp., during which Jensen was elected to replace Fleming as president. On February 19, 1991, Fleming was removed as a director. On February 20, 1991, International Corp. mailed notice of a special meeting of the shareholders to Fleming. The notice advised Fleming that the directors of International Corp. had approved the sale of substantially all of the assets of International Corp. to IPS Co.

On February 22, 1991, Fleming sent a letter to Jensen and International Corp. stating that he intended to demand payment for his shares in International Corp. and that he would not vote his shares in favor of the proposed sale of assets to IPS Co. Follow-

---

1. From the record it appears that Jensen and Kim's new corporation, IPS Co., was originally called Pizza Acquisition, Inc. However, we will refer to this new corporation as IPS Co. throughout this opinion.

ing this assertion of dissenter's rights by Fleming, the sale of assets to IPS Co. was approved by an affirmative vote of Jensen's 75 shares.

On March 15, 1991, International Corp. sent Fleming a notice of dissenter's rights, which stated that a negative value of $8520.74 was the fair market value of Fleming's shares as determined by the corporation. The corporation then offered Fleming $10.00 for his shares notwithstanding this negative value. On April 22, 1991, Fleming responded by demanding payment of $300,-000 (less the $10.00 payment already received) for his shares in the corporation.[2]

International Corp. filed a petition to determine the value of shares with the Marion Superior Court. Fleming filed an answer to this petition, along with counterclaims and third-party claims against International Corp., Jensen, Kim, and IPS Co. Counts I–III of Fleming's counterclaim relate to Fleming's employment contract with International Corp. In Counts IV–VI, Fleming alleges breach of fiduciary duties and fraud. Jensen filed a motion for partial summary judgment as to counts IV–VI of Fleming's counterclaim, which was granted by the trial court.

■ When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court. *Ramon v. Glenroy Construction Co., Inc.* (1993), Ind. App., 609 N.E.2d 1123, 1127, *trans. denied.* Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.;* Ind.Trial Rule 56(C). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. *Ramon, supra.*

In granting Jensen's motion for partial summary judgment, the trial court agreed with Jensen that Fleming's claims are barred

by IC 23–1–44–8, which provides in relevant part:

(a) A shareholder is entitled to dissent from, and obtain payment of the fair .value of the shareholder's shares in the event of, any of the following corporate actions:

\* \* \* \* \* \*

(3) Consummation of a sale or exchange of all, or substantially all, of the property of the corporation other than in the usual and regular course of business, if the shareholder is entitled to vote on the sale or exchange, including a sale in dissolution....

\* \* \* \* \* \*

(c) A shareholder:

(1) who is entitled to dissent and obtain payment for the shareholder's shares under this chapter; ...

may not challenge the corporate action creating ... the shareholder's entitlement.

According to the trial court and Jensen, IC 23–1–44–8(c)[3] provides the exclusive remedy for Fleming, a dissenting shareholder. Jensen relies heavily on the following language in the Official Comments to IC 23–1–44–8(c):

Subsection (c), which establishes the exclusivity of Chapter 44's dissenters' rights remedies, deletes [Revised Model Business Corporation Act] language stating that such rights are exclusive 'unless the action is unlawful or fraudulent with respect to the shareholder or the corporation'. Deletion of this section reflects a conscious response to the Indiana Supreme Court's decision in *Gabhart v. Gabhart* [ (1977), 267 Ind. 370, 370 N.E.2d 345].

Jensen contends that these comments clearly establish that Fleming's actions for breach of fiduciary duties and fraud are barred as a matter of law.

In *Gabhart, supra,* our supreme court analyzed Indiana Code 23–1–5–7(c) (repealed

---

2. Fleming based this estimate of the fair value of his shares on the 1989 amendment to the buy-sell agreement.

3. IC 23–1–44–8 is part of the Indiana Business Corporation Law ("BCL"), which was adopted by our General Assembly in 1986. The BCL was based largely upon the 1984 version of the Revised Model Business Corporation Act ("RMA").

and replaced with IC 23–1–44–8) which provided that:

> Every shareholder who did not vote in favor of such merger, consolidation, or exchange and who does not object in writing and demand payment of the value of his shares at the time and in the manner stated in this section shall be conclusively presumed to have assented to such merger, consolidation, or exchange.

Despite this language, the supreme court in *Gabhart* held that a minority shareholder was entitled to challenge a "freeze-out" merger[4] if the merger did not have a "valid purpose", i.e., a purpose intended to advance a corporate interest. Thus, IC 23–1–5–7 precluded dissenters from enjoining the corporate transaction only where the transaction had a valid purpose. *Id.* As noted in the Official Comments to IC 23–1–44–8(c),

> Whether or not Gabhart correctly interpreted [IC 23–1–5–7]'s exclusivity provision, the Commission believed the decision created substantial uncertainty about whether and to what extent minority shareholders could seek to enjoin or undo corporate transactions authorized by statute and approved by the majority. Given the potential for disruption of corporate transactions where a Gabhart rule applied to the BCL, the General Assembly adopted subsection (c) as a categorical statutory rule that shareholders entitled to dissenters' rights may not challenge the corporate action creating that entitlement. Hence, the kind of minority shareholder challenge to corporate action permitted by Gabhart under IC 23–1–5–7(c) is not permitted under subsection (c).

Fleming contends that IC 23–1–44–8(c) does not preclude his action for breach of fiduciary duties and fraud because he is not seeking to enjoin or otherwise challenge the corporate action creating his dissenter's rights. We agree.

Our appellate courts have not yet had the occasion to interpret the exclusivity provision of IC 23–1–44–8(c). However, in analyzing the exclusivity of the remedy available pursuant to another provision, this court had the following to say about *Gabhart, supra:*

> *Gabhart* addressed the narrow question of whether shareholders in a corporation which has effected a merger are limited to appraisal rights, or whether they can petition for dissolution of the corporation. It does not hold that shareholders in a close corporation are prohibited from recovering compensatory damages when there has been a breach of the fiduciary duty owed to them.

*W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 576, *trans. denied.*

■ A close reading of IC 23–1–44–8(c) and the Official Comments thereto reveals nothing that would preclude recovery of compensatory damages when there has been a breach of fiduciary duty or fraud. This court will not add to a statute language which does not exist therein. *Ashlin Transportation Services, Inc. v. Indiana Unemployment Insurance Board, et al.* (1994), Ind.App., 637 N.E.2d 162, 168.

> An extension of the plain meaning of a statute by the addition of words or phrases encroaches upon the legislative function. *Second National Bank of Danville v. Massey–Ferguson Credit Corp.* (1985), Ind. App., 478 N.E.2d 916, 918. 'In construing a statute, it is just as important to recognize what a statute does not say as it is to recognize what it does say.' *Irmscher v. McCue* (1987), Ind.App., 504 N.E.2d 1034, 1037.

*Id.*

■ To hold that IC 23–1–44–8(c) prohibits such actions would contravene the well-settled principle that shareholders in a closely held corporation stand in a fiduciary relationship to each other, and as such, must deal fairly, honestly, and openly with the corporation and each other. *See W & W Equipment, supra,* at 570. A majority shareholder should not be able to avoid an action for

---

4. A "freeze-out" is the use of corporate control vested in the statutory majority of shareholders or the board of directors to eliminate minority shareholders from the enterprise or reduce their voting power or claims on corporate assets to relative insignificance. *Gabhart, supra.* A freeze-out implies a purpose to force upon the minority shareholder a change which is not incident to any other corporate business goal. *Id.*

fraud or breach of fiduciary duty simply by effectuating a corporate transaction that would invoke dissenter's rights under IC 23–1–44–8. For these reasons, we conclude that counts IV–VI of Fleming's amended complaint are not barred by IC 23–1–44–8(c).

Reversed and remanded for further proceedings not inconsistent with this opinion.

HOFFMAN and SULLIVAN, JJ., concur.